## Swoope's Estate.

Argued November 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Aaron S. Swartz, Jr.,* with him *Victor J. Roberts* and *High, Dettra & Swartz,* for appellant.

*Frank Smith,* of *Smith & Maine* and *Carl A. Belin, Julian W. Barnard* and *Theodore Lane Bean,* for appellees.

Opinion by Mr. Justice Linn, January 4, 1943:

This appeal is from a decree of distribution made at the audit of an account filed by trustees under the will of Henry Bucher Swoope, who died May 21, 1927. He appointed the Provident Trust Company of Philadelphia and his widow, Maude H. Swoope, executors and trustees. The account was filed in consequence of the remarriage of testator's widow.

The disposition of the appeal depends on a correct understanding of the will; it was dated November 4, 1925. At that time and when he died, he had eight children, all minors, two daughters and six sons. He desired his children to share equally but subject to a provision of income for his wife for life, to be reduced, if she remarried, to the income of a principal of $100,000. He left personal estate of considerably over $2,000,000.00 and real estate, part of which was sold for $114,841.20. While the record does not show the value of his property when he made his will, we may assume he was then a man of large means specifying testamentary distribution in the light of that fact. The will shows that he regarded his widow as his chief income beneficiary. He created three trusts: one, in the fourth section, in the sum of $50,000 for his daughter Emma Jane Swoope, for life, with other provisions that need not now be stated; a similar trust, in the fifth section, for his other daughter Cora Arnold Swoope. In the sixth section he dealt with the residue, real and personal, providing for the distribution of income and ultimately of principal, in a number of contingencies specified in paragraphs lettered from A to G. In paragraph A he directed the trustees to permit his wife to occupy, free of rent and carrying charges, ". . . any grounds and buildings which at the time of my decease may have been occupied by me as residences, for such time or times as she may wish while she remains unmarried; . . ." any that she did not wish to occupy could be rented, the net income to be paid to her while unmarried; on her written re-

quest the trustees were authorized to sell such residences ". . . and the proceeds of such sale or sales shall become a part of the capital or principal of this residuary Trust, but the net income arising from such fund or funds shall be paid unto my wife during her life and while she remains unmarried; . . ." He also provided that, if she desired it, not exceeding $100,000 out of such proceeds should be expended for a residence to be occupied by her while she remained unmarried, the property so purchased for her to be ". . . part of the principal of this residuary Trust." In view of the position taken by testator's daughters, the appellees, in their argument on the scope and effect of paragraph A, it may be noted at this point, though it will be referred to later, that he did not provide in that paragraph, where the income should go if the widow remarried.

Paragraph B provided that the ". . . entire residue of the net income of the residuary Trust" should be paid to his ". . . wife, Maude H. Swoope, while she remains unmarried and until my oldest surviving child at the time of my death shall attain the age of twenty-one years, or until my wife shall prior thereto remarry."

Paragraph C provided that when his oldest surviving child became 21, if his wife were living and unmarried, the trustee should pay to her one-third of the net income. "The remaining two-thirds part of said net income, while my wife continues unmarried (and the entire net income from said residuary Trust from and after her death or from and after her remarriage, excepting however, the income from a fund of One hundred thousand Dollars as hereinafter provided) [this provision is contained in paragraph F to be quoted later] shall be paid by my Trustees unto all of my children then surviving, share and share alike, . . ." on limitations not now material. Paragraphs D and E dealt with distribution to the children.

In paragraph F, he dealt with remarriage; it must therefore be read with paragraph A, supra, and other

paragraphs referring to that contingency. It provided: "F. From and after the remarriage of my wife, my Trustees shall no longer pay to her the aforesaid income defined by the foregoing provisions, nor continue to permit her to use and occupy, free of rent and charges, any real estate mentioned aforesaid, but they shall immediately upon such remarriage of my wife, set apart out of the principal of the residuary Trust a capital fund of One hundred thousand Dollars, and they shall invest, reinvest and keep the same invested under the powers and authorities defined in this Will, and after deducting all proper expenses and charges therefrom for the execution of the Trust, to pay over all of the net income therefrom to Maude H. Swoope for her life. At her death, the capital or principal of this Trust shall become a part of the general residuary Trust hereinbefore created."

Paragraph G was intended to provide equal sharing by all his children; it directs: "G. My Trustees in determining the shares of the capital or principal of said Trust to be held for the benefit of my sons and daughters or to be distributed in accordance with the foregoing provisions of this Sixth Section, shall, in order to preserve equality, take into account the two sums of Fifty thousand Dollars each held in Trust by my Trustees for my daughters, Emma Jane Swoope and Cora Arnold Swoope, as provided by the Fourth and Fifth Sections respectively of this my Will." Section 7 contained spendthrift trust provisions applicable to all beneficiaries.

Depreciation in the value of the assets resulted after testator's death. At the audit of the executors' account in 1931, the balance of principal-personalty for distribution was $479,682.37 and it also appeared that "certain residences had also been sold and the balance of a 'Residence Real Estate' account, was $114,841.20." Distribution was ordered, inter alia, to the trustees; $50,000 to establish the trust under section 4 of the will for Emma Jane Swoope and a like sum for the trust under

section 5 for Cora Arnold Swoope. The residue was awarded to the trustees "for Maude H. Swoope and the eight children of the decedent under the uses and trusts provided in paragraphs 6, 7, 8, 9 and 10 of the Will." The trustees failed to set up separate trusts pursuant to that adjudication. Further depreciation[1] of assets followed in consequence of which negotiations between the trustees and the beneficiaries resulted in the execution of an agreement, dated May 27, 1935, by the trustees and by all the parties in interest, a guardian ad litem acting for the minor son and as trustee for unascertained issue; the agreement was approved by the court pursuant to section 40 of the Fiduciaries Act of 1917, P. L. 447, 20 PS section 787. It is this agreement, as related to the will, that resulted in the rival claims made at the audit. Testator's widow, Maude H. Swoope, on October 10, 1939, married a man named Tussey.

In the sixth section of the will in which testator provided for the trust of the residuary estate, he directed that ". . . immediately upon such remarriage of my wife, [the trustees shall] set apart out of the principal of the residuary Trust a capital fund of One hundred thousand Dollars . . ." and to pay the income to her for life. The depreciation in value of the assets reduced the residuary estate to a point where there was not sufficient money to set up "a capital fund of $100,000" and the substantial question became, What should be done to comply with that direction in the will?

The agreement of May 27, 1935, recited that it was made for the purpose of compromising disputes between the parties. The first, second, third and fifth paragraphs provided:

"1. Provident Trust Company of Philadelphia agrees to loan or advance to the Trustees the sum of $20,000.00. which loan or advance shall not bear interest during the first year it may be outstanding. If not repaid at

---

[1] The Schedule of Distribution filed June 3, 1935, showed that this sum had shrunk to $96,861.19.

the expiration of the first year, any unpaid balance thereof shall bear interest at the rate of five per cent. per annum. As the assets of the estate, irrespective of the character thereof, (exclusive only of the assets comprising the trusts for Maude H. Swoope in the sum of $50,000.00, and for Emma J. Swoope Norman and Cora Swoope Waterloo in the sum of $32,500.00 each, as shown in the schedule of distribution) are liquidated, the proceeds thereof shall be paid to Provident Trust Company of Philadelphia in repayment of its said loan with interest, if any be due thereon, until the same has been fully repaid.

"2. The Trustees agree to set aside the sum of $32,500.00 in cash on account of each of the trust legacies of $50,000.00 for Emma Jane Swoope Norman and Cora Swoope Waterloo respectively, and to invest the same as provided in decedent's will.

"3. The parties agree that, to the assets allotted to the residence real estate trust, appraised at their present market value, cash in the amount of $8,259.00 shall be added, so as to make the present principal amount thereof $50,000.00, as shown in the schedule of distribution."

"5. After the Provident Trust Company of Philadelphia has been repaid its loan of $20,000.00 as aforesaid, with interest if due, the proceeds of the liquidation of the assets of the estate (exclusive of the assets comprising said trusts, as shown in the schedule of distribution, for Maude H. Swoope, Emma Jane Swoope Norman, and Cora Swoope Waterloo) shall be applied to increase the trusts set up for Emma Jane Swoope Norman and Cora Swoope Waterloo (subject to the provisions of paragraph 7 hereof) until each of said trusts shall have received an additional principal amount of $17,500.00." The agreement said nothing about the remarriage of the widow.

The learned court held that by her remarriage the widow had terminated her right to receive income from

that portion of the residuary trust which was the proceeds of the sale of residence real estate, and that the principal, $50,000, referred to in the third paragraph of the agreement, became available as "assets with which to carry out the object of the agreement of compromise, substantially as though assets of the residuary trust had been liquidated;" and that, thereafter, ". . . her sole remaining interest in the estate is to have set up for her the $100,000 trust out of the residue, under Item Sixth F." Accordingly the balance for distribution was awarded, first to the repayment of the trust company's loan and then to the trustees for the trusts for the two daughters. The result, as we understand from what was said at the argument, is that Mrs. Tussey no longer receives any income. By this appeal, she challenges the decree of distribution.

We all agree that the learned court's construction of the will and of the agreement, as affecting the administration of the trusts, cannot be sustained. The agreement disposed of disputes between the trustees on the one hand and beneficiaries on the other; and provided for the establishment then of a cash principal of $32,500 for each of the daughters' trusts, and a principal of $50,000 for, what the parties to the agreement called the widow's residence real estate trust. At that time, apparently, there was neither sufficient cash, nor property then convertible into cash, to set up these trusts in the amounts stated in the will. The name "widow's residence real estate trust," given to it by the parties, is without controlling significance in construing the will; the testator directed that real estate, and if sold the proceeds, to be part of his general residuary trust. This was recognized by the learned president judge because his adjudication states that "testator conceived of it as part of the residuary trust."

Paragraph A dealt only in part with this real estate as an asset of the residuary trust. The subject was completed by paragraph F, which provided for the contingency of remarriage; he directed the trustees to set

aside $100,000 as a principal of which Mrs. Swoope, on remarrying, should have the income for life. Briefly stated, the testator intended to give to her an equitable interest in the residuary trust property liable to be reduced, but not to be destroyed, by remarriage. On the sum of $100,000, if available, she would have been entitled to income from the time of her remarriage. If, for example, the principal of his residuary trust had been a large sum (as it would have been but for the shrinkage of assets) so that, at the time of remarriage she had been receiving income on a principal of more than $100,000, the effect of her remarriage would have been to require the trustees to comply with the direction in paragraph F by reducing her income from the residuary trust accordingly. But the fact is that the principal had depreciated to such extent that she was then receiving the income of a principal sum in the neighborhood of only $50,000.

By the conclusion challenged by appellant, she is deprived of income from the residuary trust notwithstanding the testamentary direction to the contrary. The agreement does not provide that on remarriage the widow must give up, for the benefit of the two daughters and creditors, her interest in the residuary trust. On the contrary, in paragraphs 2 and 5, the parties provided that repayment of the loan and the increase to $50,000 each of the daughter's trusts may not be made out of the portion of the residuary trust on which Mrs. Swoope was at that time entitled to income. One purpose of the agreement undoubtedly was to provide that separate trusts be set up for the daughters and widow and, to that extent, supply the trustees' omission to comply with the adjudication of 1931; but the parties must have intended, as the learned court held, that the agreement be read with the will. It was not an abortive attempt to re-write a will in which testator had subjected the beneficiaries' interests to spendthrift trust provisions[2] and to restriction on alienation.

---

[2] Cf. *Harrison's Estate*, 322 Pa. 532, 185 A. 766.

There is no merit in the inference suggested by appellee and based on the reference to "Clause A of Item 6 of the Will" in the title to the Schedule of Distribution of 1935; it cannot be regarded as intended to restrict the terms of the agreement read with the will as the agreement must be read.

Decree reversed; record remitted for distribution consistent with this opinion; costs to be awarded by the court below.